IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JASON MARK HUTCHINS, | § | |
|     TDCJ-CID #1609381, | § | |
| v. | § | C.A. NO. C-12-041 |
| | § | |
| JOHN/JANE DOE, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN ACTION**

This is a civil rights action filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court retain plaintiff's Eighth Amendment claims against John/Jane Doe, identified as the director of classification for the Garza Unit NI; Sergeant N. Tamfz; Physician's Assistant Jose Declet; and Officer John Doe. It is respectfully recommended further that plaintiff's claims for money damages against these defendants in their official capacities be dismissed as barred by sovereign immunity. Finally, it

is respectfully recommended that plaintiff's claims against Warden Guterrez be dismissed for failure to state a claim or as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff Jason Mark Hutchins is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Wynne Unit in Huntsville, Texas, although his complaint involves events that arose while he was confined at the Garza Transfer Facility in Beeville, Texas. He filed this action on February 6, 2012, alleging that defendants violated his Eighth Amendment rights when, in January 2011, he was denied protective custody and assaulted by another inmate, and thereafter, denied appropriate medical treatment. (D.E. 1). He named the following individuals as defendants: (1) John/Jane Doe, director of classification at the Garza Unit;[1] (2) Warden Ernest Guterrez; (3) Sergeant N. Tamfz; (4) Jose Declet; and (5) Officer John Doe.

On February 24, 2012, a Spears[2] hearing was conducted. The following allegations were made in plaintiff's original complaint or at the hearing.

Plaintiff arrived at either the Garza East or Garza West transfer facility in January 2011, and on January 12, 2011, he was transferred to the other unit. Because he has mental health

---

[1] Plaintiff did not specify whether he was housed on Garza East or Garza West. Ernest Guterrez is the warden of both facilities. See http://www.tdcj.state.tx.us/unit_directory/nh.html.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

issues, he asked unidentified prison officials to be placed in protective custody. However, he was denied protective custody and placed in a dorm.

Plaintiff had previously become friends with an inmate who owed a debt to another inmate. On January 12, 2011, at approximately 6:00 p.m., the inmate who was owed the money confronted plaintiff seeking the money from him. When plaintiff objected to paying him, the encounter became physical, and the other inmate began assaulting plaintiff with a razor. During the attack, plaintiff noticed three correctional officers, including defendant Sergeant Tamfz, watching the assault through a glass observation window. Finally, the guards knocked on the glass causing the other inmate to stop assaulting him. The guards then entered the dorm and handcuffed the attacker and took him away. Plaintiff told the officers that he saw the razor on the floor, but he does not know whether they retrieved it or not.

Plaintiff was taken to the infirmary where he was treated by defendant Declet. Although he had an eight centimeter cut on his head, defendant Declet refused to send him to the hospital. Instead, he stitched his wound and then cleared him for isolation. Defendant Declet did not prescribe plaintiff any pain medication and refused to give him any when he asked for it.

Plaintiff arrived at his isolation cell at approximately 9:00 p.m. He was covered in blood, urine and feces. Although he advised Officer John Doe[3] about his situation, Officer John Doe refused to let him take a shower, but did provide him with a few towels. In addition, Officer Doe housed plaintiff a few cells away from the offender who assaulted him and would not move him.

Defendant Declet was supposed to recall plaintiff to medical when it was time to have his stitches removed. However, weeks went by without a lay-in for the infirmary. Plaintiff finally

---

[3] Plaintiff described Officer John Doe as Caucasian, brown hair, tall, slightly over weight, and with no visible tattoos. He was one of only two officers working isolation cells on the night of January 12, 2011.

3

sent a sick call request and, by the time he was seen in medical, his skin had grown over his stitches and the stitches had to be pried out.

Since the incident, plaintiff has continued to suffer from headaches and nausea. He has lost over forty pounds.

### III. DISCUSSION

Plaintiffs contends that defendants violated his Eighth Amendment rights by failing to place him in protective custody and failing to protect him when he was attacked. In addition, he alleges that defendants were deliberately indifferent to his serious medical needs.

**A.     The Legal Standard For Screening Inmate Civil Rights Actions.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.      Plaintiff's Claims Against Defendants In Their Official Capacity Are Dismissed.**

Plaintiff did not state in what capacity he is suing the named defendants, so it is assumed that he is suing the defendants in both their individual and official capacities.

The Eleventh Amendment bars claims against a state filed pursuant to § 1983. Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the state's sovereign immunity." Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n.7 (1979)). "Texas has not consented to this suit." Id. (citing Emory v. Texas State Bd. of Med. Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984)). A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).

To the extent plaintiff is suing a defendant in his or her official capacity, that claim is effectively, one against the State of Texas, and as such, is barred by the Eleventh Amendment. Accordingly, it is respectfully recommended that plaintiff's claims for money damages against a defendant in his or her official capacity be dismissed with prejudice as barred.

**C.      Plaintiff Raises Various Eighth Amendment Claims.**

Plaintiff maintains that defendants violated his right to be free from cruel and unusual punishment as provided by the Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to

5

guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-10 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence. Id. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

### 1. Plaintiff's failure to protect claims are retained except against Warden Guterrez.

Plaintiff is suing John/Jane Doe, the Garza Unit classification director, Warden Guterrez, and Sergeant Tamfz for failure to protect.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer, 511 U.S. at 832). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 U.S. at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. See id.; see also Oliver v.

Collins, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

Taking plaintiff's allegations as true, he has stated a claim of failure to protect against the John/Jane Doe classification director. It is understood that, upon his arrival at the Garza Unit transfer facility, plaintiff would have gone before a unit classification committee to determine his custody status based on numerous factors such as his criminal history, prison history, gang affiliation if any, known enemies, sexual orientation, and physical or mental disabilities. Thereafter, he would be assigned to housing with inmates of similar custody status, the intent to house less violent criminals apart from those that are more threatening. Plaintiff testified that his sister has researched the criminal history of the offender who assaulted him and discovered that his assailant is a violent offender. He further claimed that he had requested protective custody and it was denied because he had failed to demonstrate first a problem with another inmate. It is well settled that a plaintiff need not first sustain a physical injury before seeking relief. Farmer, 511 U.S. at 847. Thus, for purposes of § 1915A, plaintiff has established that the John/Jane Doe classification director knew or should have known that plaintiff was at risk of harm when housed with the offender who eventually assaulted him, and ignored that risk when he/she denied plaintiff's request for protective custody.

Similarly, plaintiff states a claim against Sergeant Tamfz. To protect an inmate, a correctional officer need not suffer physical injury. However, plaintiff testified that he observed three officers including Sergeant Tamfz watch the assault for some time before reacting and banging on the glass, which was the only action necessary to stop the assault. Thus, plaintiff has alleged that Sergeant Tamfz knew that plaintiff was at risk of serious harm, but ignored that risk.

Plaintiff has named Warden Guterrez as a defendant claiming that, as the warden of both of the Garza Units, he is ultimately responsible for what happens there. However, it is well established that "personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (1983) (citation omitted); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (requiring affirmative link between injury and conduct of defendant). A plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691-95 (1978) (supervisory officials cannot be held vicariously liable under § 1983 for their subordinate's actions); Beattie v. Madison County Sch. Dist., 254 F.3d 595, 600 n.2 (5th Cir. 2001). Supervisory officials may be held liable only if they affirmatively participate in acts that cause the constitutional deprivation or if they implement unconstitutional policies that causally result in plaintiff's injury. Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).

Here, plaintiff failed to allege any personal involvement on the part of Warden Guterrez. He did not claim that he ever spoke to Warden Guterrez, or that the warden implemented the classification plan. Indeed, he did not know the name of the warden at the Garza Units and had no personal contact with him. Thus, plaintiff fails to state a claim against this defendant, and it is respectfully recommended that plaintiff's claims against Warden Guterrez be dismissed for failure to state a claim or as frivolous.

**2. Plaintiff's claims of deliberate indifference to his serious medical needs are retained.**

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Estelle v.

Case 2:12-cv-00041   Document 11   Filed in TXSD on 03/19/12   Page 9 of 12

Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam). Deliberate indifference is more than mere negligence. Farmer, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

Furthermore, "negligent medical care does not constitute a valid § 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff claims that defendant Declet refused to send him to the hospital following the assault, and denied him pain medication, despite the fact that he had an eight centimeter cut that required stitches. He claims further that he was not brought back to medical timely to have his stitches removed properly, causing him unnecessary pain and suffering. He contends that, as a

9

result of the assault and the denial of emergency medical services immediately thereafter, he sustained injuries for which he continues to suffer complications such as headaches and nausea.

Taking plaintiff's allegations as true, he has stated a § 1915 claim for denial of medical attention. He claims that he was assaulted with a razor and was covered in blood, and also, that the event was traumatic enough that he lost his bodily functions. Defendant Declet did administer to plaintiff's most serious wound, but he denied him any pain medication and failed to schedule follow-up care, leading to plaintiff's stitches remaining in past the removal date. For purposes of § 1915, plaintiff has stated a claim of deliberate indifference to serious medical needs against defendant Declet, and it is respectfully recommended that the Court retain this claim.

Plaintiff has also sued Officer John Doe alleging that his refusal to allow him to take a shower following the assault amounts to an Eighth Amendment violation. He testified that he was forced to remain covered in his own blood and waste for approximately twelve hours, when there was a shower in the isolation facility. For purposes of § 1915, plaintiff has suggested that he was not permitted to shower as a means of punishment, which may be in violation of the Eighth Amendment. Thus, it is respectfully recommended that the Court allow this claim to proceed.

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the Court:

(1) Dismiss with prejudice plaintiff's claims for money damages against defendants in their official capacities;

(2)    Dismiss for failure to state a claim or as frivolous plaintiff's claims against Warden Ernest Guterrez; and

(3)    Retain plaintiff's Eighth Amendment claims against John/Jane Doe, the director of classification for the Garza Unit, Sergeant N. Tamfz, Physician's Assistant Jose Declet, and Officer John Doe, and that service be ordered on these defendants.

Respectfully submitted this 19th day of March 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure; 28 U.S.C. § 636(b)(1); and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).