IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JASON MARK HUTCHINS | § | |
|     TDCJ-CID #1609381 | § | |
| v. | § | C.A. NO. C-12-041 |
| | § | |
| JANE DOE, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Pending is Defendants' motion for summary judgment. (D.E. 35). Plaintiff has not filed a response to this motion. For the reasons stated herein, it is respectfully recommended that Defendants' motion be granted for failure to exhaust his administrative remedies.

## I.  JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II.  PROCEDURAL HISTORY

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division, and he is currently incarcerated at the Wynne Unit in Huntsville, Texas, although his complaint involves events that arose while he was confined at the Garza Transfer Facility in Beeville, Texas. (D.E. 1). He filed his complaint on February 6, 2012, alleging that he was denied protective custody and assaulted by another inmate, and thereafter, denied appropriate medical treatment in violation of his Eighth Amendment rights. Id. at 2-5. He named the following individuals as Defendants: (1) John/Jane Doe, Director of Classification at the Garza Unit; (2) Warden Ernest Guterrez; (3) Sergeant N. Tamez;[1] (4) Jose Declet; and (5)

---

[1] Though Plaintiff originally identified Sergeant Tamez as Sergeant "Tamfz" in his complaint, Defendants advised the Court in their answer of the correct spelling. (D.E. 16, at 2).

Officer John Doe.

On April 9, 2012, an order was entered dismissing Plaintiff's claims for money damages against Defendants in their official capacities, as well as his claims against Defendant Guterrez. (D.E. 14; 15).  Plaintiff's individual capacity claims against John/Jane Doe, the Director of Classification for the Garza Unit; Sergeant Nora Tamez; Physician's Assistant Jose Declet; and Officer John Doe were retained.  Id.  On April 23, 2012, Defendants filed an answer identifying Jane Doe, the Director of Classification for the Garza Unit, as Ellonor Castillo.  (D.E. 16, at 1). On May 31, 2012, Defendants filed an advisory to the court identifying Officer John Doe as Correctional Officer Christopher Blanc.  (D.E. 20, at 2).  On June 29, 2012, Plaintiff filed a motion to withdraw his complaint against Defendant Blanc, which was granted on August 3, 2012.  (D.E. 25; D.E. 29).  On November 16, 2012, the remaining Defendants filed a motion for summary judgment.  (D.E. 35).  Plaintiff has not filed a response in opposition.

### III.  SUMMARY JUDGMENT EVIDENCE

On February 24, 2012, a Spears[2] hearing was conducted.  The following allegations were made in Plaintiff's original complaint or at the hearing.

Plaintiff arrived at the Garza Unit in January 2011, and on January 12, 2011, he was assigned to the Garza East Unit.  Because he has mental health issues, he asked unidentified prison officials to be placed in protective custody.  However, he was denied protective custody and placed in a dorm.

Plaintiff had previously become friends with an inmate who owed a debt to another inmate.  On or about January 12, 2011, at approximately 6:00 p.m., the inmate who was owed

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

the money confronted Plaintiff seeking the money from him. When Plaintiff objected to paying him, the encounter became physical, and the other inmate began assaulting Plaintiff with a razor. During the attack, Plaintiff noticed three correctional officers, including Defendant Tamez, watching the assault through a glass observation window. Finally, the guards knocked on the glass causing the other inmate to stop assaulting him. The guards then entered the dorm and handcuffed the attacker and took him away. Plaintiff told the officers that he saw the razor on the floor, but he does not know whether they retrieved it or not.

Plaintiff was taken to the infirmary where he was treated by Defendant Declet. Although he had an eight centimeter cut on his head, Defendant Declet refused to send him to the hospital. Instead, he stitched his wound and then cleared him for isolation. Defendant Declet did not prescribe Plaintiff any pain medication and refused to give him any when he asked for it.

Defendant Declet was supposed to recall Plaintiff to the infirmary when it was time to have his stitches removed. However, weeks went by without a lay-in for the infirmary. Plaintiff finally sent a sick call request and, by the time he was seen, his skin had grown over his stitches and the stitches had to be pried out.

Since the incident, Plaintiff has continued to suffer from headaches and nausea. He has lost over forty pounds.

## IV. DISCUSSION

Defendants move for summary judgment on two grounds: (1) Plaintiff has failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e; and (2) Defendants are entitled to qualified immunity. (D.E. 35, at 3).

**A.      The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of hte party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, the Court may only consider affidavits made on personal knowledge, which set forth "such facts as would be admissible in evidence, and [show] affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue

for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250–51.

However, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. Id. (citation omitted). Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

**B.      Plaintiff Failed To Exhaust His Administrative Remedies.**

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e. Specifically, they contend that he did not file a timely grievance regarding the January 2011 altercation, nor did he complete the grievance procedure once he filed his out-of-time grievance.

In the Prison Litigation Reform Act, Congress mandated that prisoners must exhaust administrative remedies prior to filing § 1983 actions:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner

>confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002) (citing Porter). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 83-85 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. Jones v. Bock, 549 U.S. 199, 212 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). A prisoner must pursue his grievance at both the Step 1 and Step 2 level in order to exhaust his administrative remedies.[3] See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358 n.2). The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 548 U.S. at 94. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out

---

[3] The inmate first presents his claim in a Step 1 grievance filed at the institutional level, and, next, in a Step 2 grievance at the regional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy ¶ IV (Jan. 31, 1997)), overruled on other grounds by Jones v. Bock, 549 U.S. 199 (2007). If an inmate does not receive a written decision within 180 days after filing his Step 2 grievance, he may proceed with his other state or federal court remedies. Tex. Gov't Code § 501.008(d)(2).

some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

In Johnson, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'" 385 F.3d at 516 (quoting Porter, 534 U.S. at 525); accord Wilbert v. Quarterman, 647 F. Supp. 2d 760, 766 (S.D. Tex. 2009) (citation omitted). In addition, the nature of the complaint will influence how much detail is necessary. Johnson, 385 F.3d at 517. For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual.[4] Id.

In support of summary judgment, Defendants have offered evidence of Plaintiff's grievances filed between January 2011 and April 2012, which indicate that he failed to complete the grievance procedure regarding the conduct that forms the basis of his claims. Specifically, on September 14, 2011, he filed an out-of-time Step 1 grievance appealing a January 20, 2011 disciplinary decision finding him guilty of assaulting the inmate who had attacked him with the razor. (D.E. 35-1, at 7). This grievance was denied as untimely, and he did not file a corresponding Step 2 grievance. On December 21, 2011, he filed another Step 1 grievance, alleging the specific facts and circumstances that comprise his Eighth Amendment claims. He did not specify the Defendants in this grievance and it, too, was denied as untimely. Id. at 13. Plaintiff once again failed to file a corresponding Step 2 grievance.

---

[4] The Supreme Court has noted that "[t]he level of detail necessary ... will vary from system to system and claim to claim," because it is "the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

Because Plaintiff did not comply with the requirements of the TDCJ grievance procedure, it is respectfully recommended that his claims be dismissed pursuant to 42 U.S.C. § 1997e.

**C.     Defendants Are Partially Entitled To Qualified Immunity.**

Defendants next contend that they are entitled to qualified immunity. Specifically, they argue that Defendants Castillo and Tamez were not personally involved in any alleged deprivation, and therefore cannot be held liable pursuant to 42 U.S.C. § 1983. (D.E. 35, at 10). In addition, they maintain that neither Defendant Tamez nor Defendant Declet were deliberately indifferent as required to establish a constitutional violation. Id. at 10-14.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted). "To discharge this burden, a plaintiff must satisfy a two-prong test." Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005). First, the plaintiff must show that the defendants committed a constitutional violation under current law. Id. (citations omitted). Second, he must show that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time the events of which plaintiff complains occurred. Id. (citations omitted). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was

clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

    **1.    Step 1–Constitutional violation**.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Hudson v. McMillian, 503 U.S. 1, 8-10 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. Farmer, 511 U.S. at 834. Deliberate indifference is more than mere negligence. Id. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. Id. at 837.

    **i.    Defendants Castillo was not personally involved in any alleged constitutional violation.**

Defendants contend that Defendants Castillo and Tamez are entitled to qualified immunity because they were not personally involved in any alleged constitutional deprivation.

The Fifth Circuit has explained that a supervisory official is not liable under § 1983 unless "there exists either (1) his personal involvement in the constitutional deprivation, or (2) a

sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

Defendants first argue that Defendant Castillo was not personally involved in the unit classification decision that Plaintiff claims exposed him to a serious risk of harm. They point to the fact that she did not sit on the Unit Classification Committee that reviewed Plaintiff for determination of his housing classification and job assignments. Plaintiff has offered no evidence to contradict this assertion. Moreover, he has offered no evidence that Defendant Castillo implemented a policy that resulted in his injury, or otherwise caused the harm of which he complains. Based on this evidence, she cannot be held liable for placing Plaintiff in the same unit as the inmate who later assaulted him. To the extent Plaintiff contends that Defendant Castillo was responsible for improperly classifying his assailant, there is no evidence that she was personally involved or otherwise responsible for the other inmate's classification. Accordingly, it is respectfully recommended that Plaintiff's claims against Defendant Castillo be dismissed.

Second, Defendants contend that Defendant Tamez was not personally involved because, contrary to Plaintiff's assertions, by the time she arrived at the scene of the assault, the inmates were already separated. Therefore, they argue that she would not have had an opportunity to intervene and protect Plaintiff from his assailant. This contention is corroborated by statements made by other officers who were present, which supported a disciplinary order finding Plaintiff guilty of assaulting the other inmate. Nevertheless, these statements do not resolve the conflict in the evidence. If Plaintiff's assertions are taken as true, Defendant Tamez was present when the assault occurred and had an opportunity to prevent it. Therefore, there is a genuine issue of

10

material fact regarding whether she was personally involved in the incident that forms the basis of Plaintiff's complaint. Accordingly, it is respectfully recommended that to the extent Plaintiff's claims should not be dismissed for failure to exhaust administrative remedies, Defendants are not entitled to summary judgment on the basis that Defendant Tamez was not personally involved in the alleged constitutional violation.

### ii. Defendant Castillo did not violate any constitutional rights.

Defendants next argue that even if Defendant Castillo was personally involved in the alleged constitutional violation, Plaintiff has failed to establish that she was deliberately indifferent to a serious risk of harm by failing to protect Plaintiff.

Prison officials have a duty to protect prisoners from violence at the hand of other prisoners. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer, 511 U.S. at 832). A prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 U.S. at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient. See id.; see also Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim pursuant to § 1983).

Here, Defendants contend that Defendant Castillo was not deliberately indifferent because she did not know that Plaintiff faced a serious risk of harm by being placed in the

general prison population. As evidence, they maintain that Plaintiff did not notify the Unit Classification Committee regarding any threat by or problem he had with the other inmate in the unit, and the other inmate was appropriately housed in the general population due to his lack of previous disciplinary history. Plaintiff has offered no evidence to contradict this evidence, other than his bare assertion that the other inmate's "history and ... gang affiliation" generally rendered him a security threat to inmates. (D.E. 1, at 3). This conclusion, standing alone, does not show that Defendant Castillo was aware of a serious risk of harm to Plaintiff and was deliberately indifferent by placing either him or the other inmate in the general prison population. Accordingly, it is respectfully recommended that Defendant Castillo is entitled to qualified immunity.

### iii. Defendant Declet did not violate any constitutional rights.

Defendants next contend that Defendant Declet was not deliberately indifferent to Plaintiff's serious medical condition.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official acted with deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Wilson v. Seiter, 501 U.S. 294, 303 (1991); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam). Furthermore, "negligent medical care does not constitute a valid § 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally,

active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

      Here, Defendants have offered evidence showing that in January 2011, Plaintiff was seen by a licensed vocational nurse as well as Defendant Declet soon after the incident. Defendant Declet noted that Plaintiff had a seven to eight centimeter laceration to his scalp. He cleaned the wound, secured it shut with six staples, issued Plaintiff 800 milligrams of ibuprofen, and ordered that he receive an additional dose of the medication within six hours. Defendant Declet also ordered Plaintiff to follow up for a wound check in twenty-four hours. The next morning, Plaintiff was seen in the Administrative Segregation clinic for follow-up treatment, where the nurse noted that he was dizzy but otherwise did not suffer from any lingering effects from the incident.

      Just five days later, Plaintiff was seen by another nurse because his wound was bleeding. The record indicates that the bleeding was caused by Plaintiff, who had rubbed hair oil onto his head. Despite the bleeding, all of the staples were intact and there were no symptoms of infection. The nurse cleaned the wound and provided instructions as to how to prevent further bleeding. On January 24, 2011, Plaintiff did not appear for his appointment to have his staples removed. However, he had them removed two days later, on January 26, 2011. In an affidavit, Dr. Steven Bowers testified that upon reviewing Plaintiff's medical records, he found that Defendant Declet had provided appropriate and adequate care according to professional

13

standards. (D.E. 35-2, at 4). Plaintiff has not responded to this evidence.

Plaintiff has failed to show that Defendant Declet was deliberately indifferent to his serious medical needs through the treatment he administered to Plaintiff. Accordingly, it is respectfully recommended that Defendant Declet is entitled to qualified immunity.

**2. Step 2–Objective reasonableness.**

In light of the evidence indicating that Defendant Tamez may have violated Plaintiff's clearly established constitutional right, the Court must determine whether she is nevertheless entitled to qualified immunity from suit because her conduct was objectively reasonable in light of clearly established law. "[W]hen the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have known that the alleged acts of the defendants violated" clearly established law. Thompson v. Upshur County, 245 F.3d 447, 460 (5th Cir. 2001) (citation omitted). For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, "the plaintiff does not have to refer to precedent that is directly on point, or that declares the conduct in question is unlawful. Rather, the right is clearly established if based on preexisting law, the unlawfulness of the conduct in question is apparent." Ship v. McMahon, 234 F.3d 907 (5th Cir. 2000).

Here, Plaintiff has adequately established that Defendant Tamez acted unreasonably in light of clearly established law by failing to intervene and protect him when he was being attacked by the other inmate. The Supreme Court has long recognized that a prison official's

14

deliberate indifference to an inmate's serious risk of harm violates the Eighth Amendment. Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 105. As alleged by Plaintiff, Defendant Tamez witnessed the altercation but nonetheless failed to intervene and protect Plaintiff from his assailant.

Accordingly, it is respectfully recommended that, to the extent Plaintiff's claim is not barred for failure to exhaust his administrative remedies, Defendant Tamez is not entitled to qualified immunity.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment, (D.E. 35), be granted in full based on Plaintiff's failure to exhaust his administrative remedies. Alternatively, it is respectfully recommended that Plaintiff's claims against Defendants Castillo and Declet be dismissed and that Plaintiff's remaining claims against Defendant Tamez be set for trial.

ORDERED this 15th day of January 2013.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

15

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).